ZEHMER, Judge
(dissenting).
The Commission is required to conduct an evidentiary hearing pursuant to section 120.57(1) when a member of the retirement system disagrees with the decision of the Retirement Division Administrator and requests a hearing. Section 121.23(2), Fla. Stat. (1991). In this instance, the Commission denied relief from the Administrator’s decision because appellant “failed to present any competent medical evidence to support her claim to be totally and permanently disabled or to show that she is prevented by reason of a medically determinable physical impairment from rendering useful and efficient service as an officer and employee.” This conclusion results in significant part, no doubt, from the fact that two medical depositions tendered in evidence at the hearing were excluded for non-compliance with the Commission’s so-called “10 day rule.” In my view, the Commission abused its discretion by excluding the depositions under the circumstances shown by this record.
The term “good cause” used in rule 22J-1.0042 should be given a liberal construction in administrative hearings such as this one to excuse strict compliance with the 10-day rule when excusable neglect is shown by a noncomplying party and no prejudice to the Commission, the Division, or any other party is shown. The Commission, however, has taken the position that such “good cause” contemplates only matters beyond the petitioner’s control, and does not exist when noncompliance with the time limitation is the fault of the petitioner’s attorney. I reject this unduly restrictive construction and application of the rule in the context of administrative proceedings; such proceedings are supposed to be conducted more informally than trial court proceedings with more relaxed rules of evidence and should not be conducted so as to require parties dealing with the agency to employ a lawyer highly skilled in the intricacies and pitfalls of administrative law to present their cases. Nor should the agency hold a lawyer so employed to an excessively high standard of conduct and competence.
In my view, the Commission erred in excluding the deposition of Dr. Ruiz after being shown that the deposition was timely but inadvertently mailed to the “Division of Retirement” rather than the “Retirement Commission.” The Commission’s decision is based on the notion that it is wholly unrelated to the Division of Retirement, and thus cannot be properly served when documents are sent to the Division rather than to it. Yet, the Commission, as is the Division, is created by chapter 121, Florida Statutes, and both have clearly interrelated functions. See §§ 121.22-.24, Fla.Stat. (1991). Of particular importance to the issue in this case is the provision in section 121.24(4) that, “The Division of Retirement shall furnish administrative and secretarial assistance to the commission and shall provide a place where the commission may hold its meetings.” Despite this required interrelationship, the record before the Commission and this court is completely silent as to why the Division did not forward or otherwise provide Dr. Ruiz’s deposition to the Commission when it was received from petitioner’s attorney. Under the circumstances, I cannot understand and do not accept the Commission’s argument that mailing the deposition to the Division’s address rather than the Commission’s address is such a grievous wrong that it warrants the ultimate sanction of depriving the petitioner of any use of the deposition and the consequent denial of benefits.
Similarly, the Commission should have made a factual determination as to whether Dr. Piper had canceled previously scheduled depositions and not made himself available until just before the hearing, as represented by petitioner’s attorney. If the representations of petitioner’s attorney *1176 on that subject were found to be true, equitable treatment would have required the Commission to permit use of that deposition also. The Commission did not do this, however, opting only to summarily reject the deposition for the reasons previously recited.
The only semblance of prejudice from petitioner’s non-compliance with the 10-day rule shown by the Commission is to be found in its argument at pages 6-10 of the answer brief:
The issue then becomes whether the Commission had “good cause” sufficient to waive the 10 day rule. While it may be argued that the Petitioner, during the time she was acting pro se, should not be held to a strict interpretation of the law, certainly from the time that she was represented by counsel, she should be held to full knowledge of the rules and the instructions sent her (R-3; Appendix, page 2. Clearly, the Petitioner’s knowledge of the rules is a substantial reason to deny her motions to admit the evidence and deny the continuance.
However, to fully understand the 10 day rule, it is necessary to understand how the Commission functions and carries out its statutory duties.
The Commission is a lay body whose members are appointed by the Governor and confirmed by the Senate. Section 121.22(2), Florida Statutes. It has a legal advisor who works part time for the Commission, sits as an adviser at hearings and prepares the final orders for signature by the Chairman. The Commission meets once a month for one to two days at four different cities: Miami, Orlando, Tampa and Tallahassee.
Upon receipt of the documentary evidence from each party and ten (10) days prior to the hearing, the clerk of the Commission duplicates all of the documents filed in each case to be heard and sends each of the Commissioners a complete set of the documents. The Commissioners then review the documents for each case so that by the time the hearing commences, they are familiar with the issues and the facts of the case.
During its regularly scheduled meetings, the Commission hears several full evidentiary hearings and numerous motion hearings. It has been the practice of the Commission since its inception in 1975 to open all hearings with a preliminary statement (R-110 to 117) in which the exhibits previously sent in by the parties are formally marked into evidence. Opening statements are then made by the parties, the respective cases in chief are put on with witnesses, and closing statements are made by the parties. The Commission then goes “off the record” to deliberate on the case, the testimony and the exhibits including depositions. Any legal questions that arise are referred to the legal advisor for answers. After deliberations, the Commission then accepts a motion and a second to accept or overrule the decision of the Division of the issue of disability. A majority vote of the commissioners in attendance represents the decision of the Commission.
The legal adviser of the Commission then drafts the “final order” for review and ultimate approval by the chairman of the Commission within 90 days of the hearing in accordance with the Administrative Procedures Act.
Under the above procedure used by the Commission for over 16 years, all of the evidence and the names of the witnesses are known to the parties at least ten days and usually more prior to the hearing, and copies of all evidence are sent to each Commissioner several days prior to the hearing. The requirement for submission of documentary evidence ten days prior to the hearing is the same as the practice used by some of the hearing officers of the Division of Administrative Hearings (Section 120.57, Florida Statutes) who require the parties to exchange documents prior to the hearing in certain cases.
Given the above procedures, the issue of what constitutes “good cause” for excluding evidence submitted within ten days of the actual hearing then takes on a new meaning. The present procedure is the only way the Commission can con *1177 duct its business effectively and is fair to both parties. First, each party has the same requirements for a witness list and for filing copies of the documentary evidence. Second, after the hearing is concluded, the Petitioners have the right to a prompt decision on their case. Under the present procedure, the Petitioners know when they leave the hearing room if they have been successful or not. Third, if the Commission waited to the actual hearing date in each case to receive the evidence, then it would be the following month before the Commissioners could deliberate. Then the Petitioners would not be present during the deliberations and would not know of the decision. The amount of time left to the legal adviser to prepare the written order would be reduced to only 60 days. Fourth, since most of the Commissioners are employed full time in other occupations, they cannot take more than 1 to 2 days a month to devote to Commission business and certainly could not devote the time to reading a record that is at least 1 month old plus prepare for new hearings in the current month. Fifth, since the same Commissioners are not in attendance at all of the hearings, the Commission would have to order a transcript of each hearing and read it before the deliberations in each case. The increase in time and expense of these hearings would be substantial.
The “good cause” then is the need for the Commission to have reviewed the material in each case prior to the hearing. If each Petitioner who came before the Commission with a case brought in their written documents at the time of the hearing, chaos would be the result. The Commission would have to take recess of from V2 to 1 hour for each case to review the documents. Even that recess would require that the Petitioner have brought in sufficient copies so that each of the Commissioners could read them separately. If only one copy of the documents was brought in, then the problem is compounded because each Commissioner would have to read the material in succession. Obviously, then the process of reading the new information would take considerably longer than lh to 1 hour. In the case at bar, there was no showing that multiple copies of the two transcripts were possessed by Petitioner. In addition, Petitioner had not one but two depositions from two doctors that had not been submitted within the 10 days prior to the hearing. It would have taken easily 1 to 2 hours for all of the Commissioners to read the two depositions before the hearing could resume.
The outlined procedure does not demonstrate a compelling need for excluding consideration of the late-tendered depositions under the circumstances of this case. The Commission seemingly concedes that a less strict construction of the rule would have been applied had petitioner not been represented by counsel, i.e., a double-standard not disclosed by the rule. The Commission’s argument also confuses the expedient of requiring parties to exchange documents before a hearing with the decision to admit such documents in evidence at hearing when time limitations have been breached. I can readily sympathize with the need for Commission members to have information prior to the hearing for preparing to understand what will take place at the evidentiary hearing; but I do not accept the notion that the only way the Commission can operate effectively is to have depositions read prior to the evidentiary hearing. Rather, I am concerned that the described procedure unduly constrains the decision-making process in contested matters. Of greater significance, however, is the notion that litigants before the Commission are not allowed to read depositions to the Commission during an evidentiary hearing because it takes too much time! While deposition testimony is often submitted, in the absence of objection, in written form without reading it to the trier of fact, I am not aware of any rule of practice that would preclude a party from reading such testimony to the trier of fact during the evidentiary hearing if the party so desired. Deposition testimony is to be accorded the same probative value as live testimony. While I am not unsympathetic with the concerns of Commission members *1178 that they can only allot one or two days a month to such hearings, I am deeply concerned that such time constraints would be used as a procedural basis for excluding evidence tendered during such proceeding.
The Commission having shown no reasons for disallowing the use of the depositions in the face of the reasonable explanations offered by counsel, I conclude that the Commission “did not afford a fair and equitable hearing in accordance with chapter 120.” Section 121.23(4)(a), Fla.Stat. (1991). Therefore, I would reverse the appealed order and remand for a new hearing at which the depositions may be considered.